1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ARTURO MISAEL HERNANDEZ              No. 1:25-cv-01569-DAD-AC
     BURRUEL,
12
                    Petitioner,
13                                        ORDER GRANTING PETITIONER'S *EX*
        v.                                *PARTE* MOTION FOR A TEMPORARY
14                                        RESTRAINING ORDER
     RON MURRAY, et al.,
15                                        (Doc. No. 2)
                    Respondents.
16

17   _____

18          This matter is before the court on petitioner's *ex parte* motion for a temporary restraining

19   order filed on November 17, 2025.  (Doc. No. 2.)  For the reasons explained below, the court will

20   grant petitioner's motion.

21                              **BACKGROUND**

22          On November 16, 2025, petitioner Arturo Misael Hernandez Burruel filed a petition for

23   writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his detention by United States

24   Immigration and Customs Enforcement ("ICE").  (Doc. No. 1.)  Petitioner asserts the following

25   two claims in that petition:  (1) violation of petitioner's right to due process; and (2) violation of

26   the Immigration and Nationality Act.  (*Id.* at ¶¶ 48–51.)  In support of the pending motion for a

27   temporary restraining order, petitioner has presented evidence of the following.

28   /////

                                           1

Petitioner is a native and citizen of Mexico who was born on October 7, 1997 in Baja California Sur.  (Doc. No. 2-1 at 2.)  Petitioner entered the United States with a tourist visa on or about December 2019 and overstayed his visa.  (*Id.* at 4, 7.)

He met his wife Adolfina Arellano Almazan on February 14, 2020, and the couple married on January 8, 2022 in San Jose, California.  (*Id.* at 4.)  They had their first child, Mariana, on June 8, 2023, and their second child, Melina, on July 14, 2025.  (*Id.*)  On August 22, 2022, petitioner and his wife filed immigration paperwork for petitioner to obtain his lawful permanent residence status in the United States.  (*Id.* at 37.)  Petitioner's application for residence confirmed that he had never been arrested or convicted of any crime, had never provided any false documentation or information to a United States official, and was gainfully employed.  (*Id.* at 19, 24, 27.)  On November 4, 2025, petitioner and his wife attended their immigration interview in San Jose, California.  (*Id.* at 5.)  Petitioner alleges that, without warning, he was arrested by immigration officers during his interview and has remained in immigration detention since that time.  (Doc. No. 1 at ¶¶ 2, 13.)  Petitioner has not been given a bond hearing and has not been placed in immigration proceedings.  (Doc. No. 2-1 at 6.)

As a result, according to petitioner's wife, she has been unable to sleep or eat well and her preexisting post-partem depression seems to be getting worse.  (*Id.* at 5–6.)  Meanwhile, their two-year-old daughter seems to understand what is going on, has been crying every hour for her father, and has a hard time falling asleep since it was her dad who always put her to sleep by singing to her.  (*Id.* at 5.)  Petitioner's wife does not have money to pay for their daughter's diaper or formula, so her extended family, parents, and siblings have been helping them buy diapers, formula, and food.  (*Id.* at 6.)

On November 17, 2025, petitioner filed the pending motion for a temporary restraining order.  (Doc. No. 2.)  In that motion, petitioner requests that the court order that respondents release him from custody if he is not provided a custody hearing under 8 U.S.C. § 1226(a) within seven days of the court's order.  (*Id.* at 22.)  Petitioner also requests that respondents be enjoined from transferring petitioner outside of the Eastern District of California.  (*Id.*)  On the same day, the court directed petitioner's counsel to serve respondents with a copy of the petition, the motion

2

for temporary restraining order, and accompanying papers, and set a deadline for respondents' opposition.  (Doc. No. 4.)  On November 18, 2025, respondents filed their opposition to the pending motion.  (Doc. No. 6.)  On the same day, the court directed petitioner to file a reply to respondents' opposition.  (Doc. No. 7.)  On November 19, 2025, petitioner filed his reply.  (Doc. No. 8.)

## LEGAL STANDARD

The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35 (citation omitted).  The party seeking the injunction bears the burden of proving these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.

1    The likelihood of success on the merits is the most important *Winter* factor.  *See Disney*

2    *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiff bears the burden of

3    demonstrating that he is likely to succeed on the merits of his claims or, at the very least, that

4    "serious questions going to the merits were raised."  *All. for Wild Rockies*, 632 F.3d at 1131.

5                                      **DISCUSSION**

6    **A.    Likelihood of Success on the Merits**

7    Petitioner argues that he is likely to succeed on the merits because 8 U.S.C. § 1226, rather

8    than 8 U.S.C. § 1225, applies here, and petitioner has been detained without a bond hearing,

9    which should have been afforded to him pursuant to 8 U.S.C. § 1226(a).  (Doc. No. 2 at 12–18.)

10   In opposition, respondents agree that 8 U.S.C. § 1226 applies in petitioner's case, but argue that

11   petitioner is entitled to a custody redetermination before an Immigration Judge only upon request,

12   and petitioner has not made the requisite request.  (Doc. No. 6 at 1.)  Petitioner responds by

13   arguing that he has had no opportunity to request a bond hearing because he is unable to request a

14   bond hearing without first being brought before the immigration court, and he has never attended

15   an immigration court hearing or otherwise been placed within the immigration court's

16   jurisdiction.  (Doc. No. 8 at 3.)  Because attempts on his part to request a bond hearing would be

17   futile and cause irreparable injury in the form of his continued detention, petitioner argues that the

18   court should waive any prudential exhaustion requirement.  (*Id.* at 5–8.)

19   The court may require a petitioner to exhaust certain administrative remedies, though this

20   requirement is "prudential, rather than jurisdictional, for habeas claims."  *Hernandez v. Sessions*,

21   872 F.3d 976, 988 (9th Cir. 2017).  Courts consider the following factors when deciding whether

22   to require the petitioner to exhaust administrative remedies:

23                (1) agency expertise makes agency consideration necessary to
                  generate a proper record and reach a proper decision; (2) relaxation
24                of the requirement would encourage the deliberate bypass of the
                  administrative scheme; and (3) administrative review is likely to
25                allow the agency to correct its own mistakes and to preclude the need
                  for judicial review.
26

27   *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted).  "If a petitioner fails to

28   exhaust prudentially required administrative remedies, then 'a district court ordinarily should

                                            4

1    either dismiss the petition without prejudice or stay the proceedings until the petitioner has

2    exhausted remedies.'" *Hernandez*, 872 F.3d at 988 (citation omitted).  "Nonetheless, even if the

3    three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential

4    exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of

5    administrative remedies would be a futile gesture, irreparable injury will result, or the

6    administrative proceedings would be void.'" *Id.*

7          As to the first *Puga* factor, here agency expertise is not necessary to generate a proper

8    record or reach a proper decision.  It is undisputed by the parties before the court that petitioner is

9    entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a).  Whether this court or an immigration

10   court directs that one be provided to petitioner is immaterial.  As to the second *Puga* factor,

11   relaxation of the exhaustion requirement in this context would not encourage deliberate bypass of

12   the administrative scheme.  Instead, requiring a bond hearing will shift initial decision-making

13   authority back to the immigration court as appropriate.  As to the third and final *Puga* factor,

14   requiring administrative review of the need for a bond hearing is not likely to allow the agency to

15   correct its own mistakes and preclude the need for judicial review.  In fact, according to

16   respondents, they have not yet even had the opportunity to make a mistake as to the provision of a

17   bond hearing because petitioner has not, as far as they are concerned, properly requested one.  On

18   the other hand, according to petitioner, "[r]espondents have ripped the wheels off the vehicle of

19   Due Process and ran it into a ditch" by preventing petitioner from even requesting a bond

20   hearing.[1]  (Doc. No. 8 at 2.)  The court finds that whether respondents have not yet erred or have

21

22   _____

[1]  The court need not and does not address petitioner's argument that exhaustion is futile because
     respondents have deprived him of the ability to request a bond hearing with the immigration

23   court.  The court does note, however, that "[j]urisdiction vests, and proceedings before an
     Immigration Judge commence, when a charging document is filed with the Immigration Court by

24   the Service."  8 C.F.R. § 1003.14(a).  "However, no charging document is required to be filed
     with the Immigration Court to commence bond proceedings[.]"  *Id.*  Even assuming no charging

25   document has been filed, "[a]pplications for the exercise of authority to review bond
     determinations" may be made, "[i]f the respondent is detained, to the Immigration Court having

26   jurisdiction over the place of detention[.]"  8 C.F.R. § 1003.19(c)(1).  Where, as here, petitioner
     has counsel who can file a request for a bond hearing, it would appear conceivable that

27   respondents' failure to initiate immigration proceedings does not necessarily prevent petitioner

28   from filing directly with the appropriate immigration court to request a bond hearing.

1  prevented petitioner from seeking review of respondents' errors, requiring petitioner to pursue

2  administrative remedies in this case would not afford respondents the opportunity to correct any

3  mistakes.

4  Finally, the court observes that respondents' argument regarding whether petitioner has

5  requested a bond hearing through administrative channels would appear to be at least arguably

6  disingenuous where petitioner's filing of this action and motion for a temporary restraining order

7  has obviously put respondents on notice of petitioner's request just as well, and yet respondents

8  have offered no assurances to this court of plans to afford petitioner the requested bond hearing to

9  which they agree he is entitled.

10  Because consideration of each *Puga* factor favors waiving the prudential exhaustion

11  requirement in this limited regard, the court will do so.  Having dispensed with respondents' sole

12  argument in opposition to petitioner's motion, the court finds that petitioner is likely to succeed

13  on the merits.

14  **B.    Irreparable Harm**

15  Petitioner argues that continued immigration detention, harms to petitioner's family

16  resulting from his absence, and violation of petitioner's due process rights all constitute

17  irreparable harm.  (Doc. No. 2 at 19–20.)  Respondents do not argue otherwise.

18  The Ninth Circuit has recognized that there are "irreparable harms imposed on anyone

19  subject to immigration detention" such as "subpar medical and psychiatric care in ICE detention

20  facilities, the economic burdens imposed on detainees and their families as a result of detention,

21  and the collateral harms to children of detainees whose parents are detained."  *Hernandez*, 872

22  F.3d at 995.  Petitioner has offered evidence that his wife and two children rely on him

23  financially, mentally, and emotionally and are experiencing and will continue to experience

24  irreparable harm while he is detained.  (Doc. No. 2-1 at 5–6.)  Accordingly, the court finds that

25  continued detention without the possibility of release through a bond hearing would impose

26  irreparable harm on petitioner and his family.

27  /////

28  /////

C.    **Balance of Equities and Public Interest**

Petitioner argues that the last two *Winter* factors—the balance of equities and public interest—favor the granting of his motion for a temporary restraining order.  (Doc. No. 2 at 20–21.)  Once again, respondents do not argue otherwise.

The consideration of the balance of equities and the public interest in an injunction merge "[w]hen the government is a party[.]"  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  "Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, the public has a strong interest in upholding procedural protections against unlawful detention."  *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *6 (E.D. Cal. July 16, 2025) (internal quotation marks omitted) (quoting *Vargas v. Jennings*, 2020 WL 5074312, at *4).  Meanwhile, as petitioner convincingly argues, immigration bond hearings are routine procedures that impose a minimal cost on the government.  *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("[T]he Government's interest in placing Petitioner in detention without a hearing is low. . . . The effort and cost required to provide Petitioner with procedural safeguards is minimal[.]").  Therefore, the court concludes that consideration of the last two *Winter* factors also favor granting petitioner's motion for a temporary restraining order.

## CONCLUSION

For the reasons above,

1.    Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED as follows:

a.    Respondents are ORDERED to either, within seven (7) days from the date of this order, afford petitioner an individualized bond hearing before an immigration judge with authority to grant petitioner bail pursuant to 8 U.S.C. § 1226(a) or immediately release petitioner from custody under an order of supervision;

b.    Respondents are ENJOINED AND RESTRAINED from transferring petitioner outside of the Eastern District of California;

2. The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction no later than fourteen (14) days from the date of entry of this order; and

3. Under the circumstances of this case, petitioner will not be required to post bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated:  **November 20, 2025**

_Dale A. Drozd_

DALE A. DROZD
UNITED STATES DISTRICT JUDGE